UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

KIMBERLY WILLIAMS                                                                                    PLAINTIFF

v.                                                                            CIVIL ACTION NO. 3:11cv128-DPJ-FKB

MISTRAS GROUP, INC.                                                                              DEFENDANT

ORDER

This employment-discrimination case is before the Court on the remaining portions of Defendant Mistras Group, Inc.'s Motion for Summary Judgment [26].  The Court previously granted summary judgment as to the alleged sexual harassment and now considers Williams' retaliation claim.  Having fully considered the issues, the parties' submissions, and oral argument, the Court finds that Mistras's Motion should be granted.

I.      Facts and Procedural History

Plaintiff Kimberly Williams began her employment with Mistras, which performs non-destructive testing for Chevron at its refinery in Pascagoula, Mississippi, on September 28, 2009. Approximately ten months after she began working at Mistras, or in July 2010, Williams alleges that fellow employee Russ Gardner began acting inappropriately toward her.  On August 16, 2010, Williams reported Gardner's behavior to her supervisor and the conduct ceased.  Later that month, Williams again complained about Gardner because he would "walk around with a smirk on his face."  Mistras investigated the claim and took corrective action.  Primarily because Mistras took prompt remedial action, the Court dismissed Williams' sexual harassment claim in an Order [40] dated March 2, 2012.

That leaves Williams' retaliation claim, in which she accuses Mistras of terminating her employment on November 19, 2010, because of her complaints against Gardner.  The Court

heard oral argument regarding this claim on March 9, 2012, and is now prepared to rule under the same standard addressed in the March 2, 2012 Order [40].

II. Analysis

"A plaintiff establishes a prima facie case of retaliation by showing (I) [s]he engaged in a protected activity, (ii) an adverse employment action occurred, and (iii) there was a causal link between the protected activity and the adverse employment action." *Hernandez v. Yellow Transp., Inc.*, 641 F.3d 118, 129 (5th Cir. 2011). Although the parties initially disputed the causation element of the prima facie case, Mistras retreated from that position at the hearing. Regardless, the Court will assume for argument sake that Williams has met this minimal burden.

Because she did, the burden shifts to Mistras to "articulate a legitimate, nonretaliatory reason for the adverse employment action." *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 330 (5th Cir 2004). Mistras met this burden by proffering generally that Williams "was 'performing poorly' and 'engaging in improper work conduct.'" Def.'s Mem. [27], at 15. It then provided a laundry list of work-rule violations and other disciplinary problems which will be addressed in more detail below.

Mistras's legitimate, non-retaliatory reasons for its decision shifted the burden again to Williams to show either: "(1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative)." *Black v. Pan Am. Labs., L.L.C.*, 646 F.3d 254, 259 (5th Cir. 2011) (citations and quotations omitted). Williams chose the pretext theory of liability.[1]

---

[1]*See* note 2 *infra*.

To establish pretext, the plaintiff must present evidence showing that the employer's "proffered rationale was pretextual and that engaging in the protected activity was the but-for cause of the adverse employment action." *Hockman*, 407 F.3d at 330. To meet this ultimate burden, the plaintiff must show a "conflict in substantial evidence" as to whether she would have suffered the adverse-employment action had she not engaged in protected activity. *Long v. Eastfield College*, 88 F.3d 300, 308 (5th Cir. 1996). "[A] factfinder may infer the ultimate act of retaliation from the falsity of the [defendant's] explanation." *Gee v. Principi*, 289 F.3d 342, 348 (5th Cir. 2002) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146–48 (2000)). But "[m]erely disputing [an employer's] assessment of [a plaintiff's] work performance will not necessarily support an inference of pretext." *Evans*, 246 F.3d at 355. The inquiry is focused on whether Mistras's explanation—accurate or not—is "the real reason" for firing Williams. *Laxton v. Gap Inc.*, 333 F.3d 572, 579 (5th Cir. 2003). Finally, Williams "must put forward evidence rebutting each of the nondiscriminatory reasons [Mistras] articulates." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001).

Turning then to the disputed acts, Williams has not rebutted each ground Mistras cited. First, Mistras says Williams was chronically late for work and she left early "at least once without providing any notice to her supervisor." Def.'s Mem. [27] at 4. Specifically, according to Project Manager Eric Dillard, Williams was late "at least thirty times" between June 7, 2010, and November 10, 2010. Mot. Summ. J. [26] Ex. H, Dillard Decl. ¶ 5. Williams does not dispute that she was habitually late for work. Instead, she attempts to show pretext by arguing that a co-worker, Amy Denton, also arrived late on one of the many days Williams was late but that Mistras reprimanded Williams and not Denton. Pl.'s Mem. [33] at 7. But the unrebutted

3

record evidence demonstrates that Denton was hired after Williams was reprimanded. Mot. Summ. J. [26] Ex. I, Irish Decl. Ex. A, at Mistras/Williams 0135; Def.'s Rebuttal [34] Ex. X, Dillard Supp. Decl. ¶ 7. Moreover, the two were not similarly situated, given Williams' history of arriving late. Williams has not rebutted this basis for the termination. *See Dooley v. Parks & Recreation for Parish of E. Baton Rouge*, 433 F. App'x 321, 324 (5th Cir. 2011) (holding that plaintiff failed to rebut grounds for termination when he admitted conduct and failed to identify a similarly-situated comparator).

Second, Mistras says Williams drove into the refinery without a valid license and despite being told not to. Williams admits that she drove into the refinery without a valid license but claims she stopped doing so when her supervisor instructed her to stop. Pl.'s Resp. [32] Ex. A, Williams Dep. 88–89.

Third, Mistras alleges that Williams was behind on her work in a number of ways: she failed to issue reimbursement checks in a timely fashion; she neglected to process background checks; she failed to record expenses correctly, creating a risk of delays in payments to Mistras; and she failed to log expenses daily, causing accounting spreadsheets to be off by thousands of dollars. Def.'s Mem. [27] at 5. Again, Plaintiff does not dispute that she was behind. In fact, she testified that she "was always behind." Pl.'s Resp. [32] Ex. A, Williams Dep. at 87. She responds, however, that Mistras denied her the opportunity to work overtime, which would have enabled her to catch up. *Id*. at 53. She also claims that others were allowed overtime, Pl.'s Mem. [33] at 7, but she acknowledged in her deposition that those employees were not billable employees like herself. Pl.'s Resp. [32] Ex. A, Williams Dep. at 54. They were not, therefore,

similarly situated, and Williams has not rebutted this basis for Mistras's decision. *See Dooley*, 433 F. App'x at 324.

Fourth, Mistras complains that, "on numerous occasions Williams neglected to protect confidential information for which she was responsible." Def.'s Mem. [27] at 5. There are two ways in which Williams allegedly failed to protect information. First, Mistras contends that Williams left confidential information on a public printer. Williams acknowledged the conduct in her deposition. Pl.'s Resp. [32] Ex. A, Williams Dep. at 84. She also admitted in response to Mistras's request that she "left personal information regarding Mistras Group employees on a public printer on several occasions despite being instructed not to do so." Def.'s Mot. [26] Ex. G, Resp. No. 10. Williams contends, however, that the problem occurred when the printer jammed and that the documents printed without her knowledge after the copier got repaired. Pl's Resp. [32] Ex. A, Williams Dep. at 84–85. Second, Mistras complained that, on at least two occasions, Williams "purposefully showed confidential information to unauthorized individuals despite being explicitly instructed not to do so." Def.'s Mem. [27] at 6. One of these incidents involved a Chevron employee, Nick Sims, who allegedly had a view of Williams' monitor while she told him that she was working on a background check. Williams denied the allegation in her deposition but offered no other evidence to support her position. Pl.'s Resp. [32] Ex. A, Williams Dep. at 74, 86.

Finally, Mistras claims Williams "became increasingly insubordinate," citing as examples allegations that she yelled at Project Manager Eric Dillard in an administrative meeting and that she ultimately refused to attend the required administrative meetings. Def.'s Mem. [27] at 7. Williams admits having disagreements with Dillard but denies yelling at him in a meeting.

5

Pl.'s Resp. [32] Ex. A, Williams Dep. at 78–79, 83, 102.  But Mistras also contends that Williams acted in an insubordinate way when she attended an employee meeting regarding tardiness and arrived late the very next day.  Williams states at one point in her deposition that she does not "recall" the meeting.  *Id.* at 81.  But elsewhere she admits that there was a meeting where management "stressed the importance of being on time" and that she was "late the very next day." *Id.* at 43.  She has not rebutted this reason with substantial evidence.

Plaintiff's memorandum in response to the summary-judgment motion states that "[a] clear review of Ms. Williams' deposition testimony shows that she has contradicted every single allegation against her."  Pl.'s Mem. [33] at 8.  But as shown above, the record does not support the contention.  Although dispute may exist as to certain alleged conduct, Williams admits some of the acts and rejects other acts with conclusory and unsupported assertions.  The Court finds that she has not met her burden of rebutting each and every stated reason.  *Wallace*, 271 F.3d at 219.[2]

---

[2] Plaintiff contends that, following *Smith v. Xerox Corp.*, 602 F.3d 320 (5th Cir. 2010), "the 'but for' requirement is no longer required for retaliation cases."  Pl.'s Mem. [33] at 8. *Xerox* could be interpreted as holding that plaintiffs need not show "but-for" causation in retaliation cases where plaintiffs pursue a mixed-motives theory.  *Xerox*, 602 F.3d at 333.  But *Xerox* did nothing to alter the "but-for" standard applied in pretext cases.  *Xerox*, 602 F.3d at 333; *see also Ogletree v. Glen Rose Indep. Sch. Dist.*, 443 F. App'x 913, 918 (5th Cir. 2011) (applying but-for causation in pretext case); *Gollas v. Univ. Of Tex. Health Sci. Ctr. At Houston*, 425 F. App'x 318, 327 (5th Cir. 2011) (applying but-for causation because plaintiff pursued claim under pretext theory).  Thus, *Xerox* did not dispense with "but-for" causation in all retaliation cases as Plaintiff suggests, clearly leaving the standard untouched in pretext cases.

Plaintiff has pursued this case under the pretext theory from the beginning.  *See* Amended Compl. ¶ 15 (not mentioning "mixed-motives" or "motivating-factor" and averring instead that "[t]he reason for Plaintiff's termination given by Defendant is false and the real reason Plaintiff was terminated was in retaliation," *i.e.*, pretext).  The pretext theory carries through her responsive memorandum, in which she never mentions mixed motives or motivating factor, attempts to rebut Mistras's non-retaliatory reasons for its decision, and then offers other

6

During oral argument, Plaintiff's counsel argued that pretext can be shown in other ways. He argued first that Mistras had no problem with Williams' performance before her complaints and that the sudden reprimands evidence retaliation. There may be instances where such evidence could avoid summary judgment. But here, Williams has not directed the Court to evidence regarding the company's pre-complaint attitude toward her. *See* Fed. R. Civ. Pro. 56(c)(1)(A), (3).[3]

Moreover, post-complaint discipline is not necessarily indicative of pretext. "Anti-discrimination statutes do not prevent employers from disciplining employees who violate

---

"evidence of pretext." Pl.'s Mem. [33] at 8. She did the same during oral argument when counsel expressly stated that there were other ways to prove pretext and never mentioned mixed motives or motivating factors. Thus, to the extent this is a pretext case, the "but-for" standard applies. *Gollas*, 425 F. App'x at 327 (applying but-for causation because plaintiff pursued claim under pretext theory).

There is, however, some ambiguity in the hearing transcript. During oral argument, the Court asked about Plaintiff's generic *Xerox* argument and whether the standard for retaliation cases is now "mixed motives." Although Williams' attorney never claimed that this is a mixed-motives—rather than pretext—case, he did say that he thought *Xerox* applied to change the "but-for" standard. First, it is not at all clear that Williams intended a mixed-motives approach for the reasons stated above. Second, if counsel's response to the Court's question during the hearing was enough to trigger a mixed-motives theory, then the unpublished opinion in *Nunley v. City of Waco*, explains that the "decision in *Xerox* did not dispense with this final 'but for' requirement for avoiding summary judgment, even in a mixed-motives case." 440 F. App'x 275, 281 (5th Cir. 2011); *see also Hart v. Starkville Ford-Lincoln-Mercury, Inc.*, No. 1:10CV92–SA–DAS, 2012 WL 426440, at *13 (N.D. Miss. Feb. 9, 2012) (interpreting *Nunley* as requiring plaintiffs to prove "but-for" causation in mixed-motives retaliation cases). Whether *Nunley* accurately interpreted *Xerox* will probably receive additional attention in the future, but it matters not in this case because under either theory the Court would grant Mistras's motion.

[3]Office Manager Lorie Irish stated in her declaration that she had concerns regarding Williams' work performance from the beginning. Def.'s Mot. [26] Ex. I ¶4. Irish states that she counseled Williams, though the date is not clear, and that Williams responded, "I just don't care. I hate my job." *Id*. Williams also admitted "inform[ing] at least one Mistras Group employee that [she] wanted to be terminated." *Id*. Ex. G, Resp. No. 12.

company rules or policies, and an employee cannot use such a statute as a shield against legitimate disciplinary action." *Jarjoura v. Ericsson, Inc*., 266 F. Supp. 2d 519, 533 (N.D. Tex. 2003). *Compare Shirley v. Chrysler First, Inc*., 970 F.2d 39 (5th Cir. 1992) (holding that plaintiff proved causation with proof of temporal proximity, unsubstantiated complaints, verbal harassment over filing EEOC charge, and lack of disciplinary history during nine years of employment), *with Strong v. Univ. Healthcare Sys., L.L.C*., 482 F.3d 802, 808 (5th Cir. 2007) (affirming summary judgment and distinguishing *Shirley* because Strong "had worked for UHS for two years, not nine; Strong's disciplinary record was not completely clean prior to her complaint; and Strong's poor performance and improper conduct were not unsubstantiated when she was fired"). The present case is in line with *Strong*. Williams worked for Mistras for about half as long as Strong's employment, many of the performance issues have been substantiated, and Williams has not addressed her pre-complaint performance with record evidence.

Williams next points to a pattern of antagonism. She first raised this argument in her memorandum while attempting to show a prima facie case. She argued then that even with a large gap between the protected activity and the termination, "where there is a pattern or atmosphere of hostility or animosity in the workplace, even a substantial lapse of time may fail to dispel the retaliatory inference." Pl.'s Mem. [33] at 6. Her position was not without authority; although the Fifth Circuit has not addressed the issue, many other federal circuits recognize that a pattern of antagonism can create a sufficient link at the prima facie stage. *See*, *e.g.*, *Jensen v. Potter*, 435 F.3d 444, 450 (3d Cir. 2006).

But Mistras essentially conceded the prima facie case during oral argument, so Plaintiff morphed her theory to support a jury question on "but-for" causation. To the extent Williams

8

argues that an alleged pattern of animosity beginning shortly after her internal complaint creates temporal proximity, it must be remembered that "temporal proximity alone is insufficient to prove but for causation." *Strong*, 482 F.3d at 808.  And in this case, there is neither proof of a similarly-situated comparator who was treated better nor substantial evidence rebutting each non-retaliatory reason offered for the termination of her employment.  To the extent Williams argues that the alleged pattern of animosity somehow absolves those failures of proof and provides an independent basis for establishing a fact question on her ultimate burden, Plaintiff's counsel  acknowledged during the hearing that he is aware of no legal authority supporting his theory.[4]

Williams finally argues that Mistras's "continuous questionable objections in discovery are evidence of pretext."  Pl.'s Mem. [33] at 8 (citing *Emmel v Coca-Cola Bottling Co. of Chicago,* 95 F.3d 627, 634–35 (7th Cir. 1996)).  In particular, Williams cites Mistras's Response to Interrogatory No. 11 as being particularly egregious.  The interrogatory asked Mistras to identify the reasons for the termination.  The response stated:

> See objection 4[68].  Subject to and without waiving these objections, each and every fact or event that supports the Plaintiff's termination cannot be listed here.

---

[4]In the Eleventh Circuit, the acts constituting the pattern at the prima facie stage must themselves be materially adverse.  *See Jones v. Fulton Cnty., Ga.*, 446 F. App'x 187, 191–92 (11th Cir. 2011).  Here, Williams makes no such argument, contending instead that the termination was the adverse employment action.  Along these lines, it must be noted that many of the events upon which Williams bases the argument are not supported in the record for the reasons stated above.  In addition to those, Williams claims that her desk was moved so her supervisor could keep a close eye on her, but she admits that she has no proof to support her theory and that she and five other employees were relocated. Pl.'s Resp. [32] Ex. A, Williams Dep. at 46.  She also claims that her alleged harasser attended meetings to intimidate her, but these statements are conclusory and speculative.  Finally, she claims that she was denied a parking pass inside the facility gate, but there is no evidence that she was treated less favorably than similarly-situated co-workers.

> The reasons the Plaintiff was terminated include, but are not limited to, the following: insubordination, tardiness, careless handling and disclosure of confidential employee information and confidential company information, poor performance, and breaching various company policies.  Documents containing information responsive to this request will be produced to the Plaintiff.

The Court can envision an interrogatory response creating an argument for pretext—*e.g.*, giving a contradictory reason for the decision.  *See Gee v. Principi*, 289 F.3d 342, 347–48 (5th Cir. 2002) (reversing summary judgment and finding that inconsistencies in supervisor's account of the facts surrounding employer's promotion decision—including the identities of participants, the criteria used, and whether a consensus was reached— "cast doubt on [employer's] explanation, thereby enabling a reasonable fact finder to conclude that it was false").  But the disputed objections in this case cannot support an inference of pretext.  Given the number of performance issues, it is not surprising that Mistras would offer a general objection.  The response itself provides the same list of documented performance issues Mistras cited in its motion for summary judgment.  There is no inference of pretext.

IV.     Conclusion

For the foregoing reasons, the Court finds that the remaining portions of Defendant's Motion for Summary Judgment [26] should be granted.  Plaintiff's retaliation claim is dismissed with prejudice.  A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 20th day of March, 2012.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE